**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**CHARLES EDWARD JORDAN, JR.** **PLAINTIFF**

**V.** **CAUSE NO. 4:26-CV-00101-RP**

**SUPERINTENDENT SEQUEIA WREN, et al.** **DEFENDANTS**

# MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the *pro se* prisoner complaint of Charles Edward Jordan, Jr., who challenges the conditions of his confinement under 42 U.S.C. § 1983. Upon due consideration of Jordan's allegations and the applicable authority, the Court finds that Jordan's claims should be dismissed for failure to state a claim upon which relief can be granted.

## Screening Standards

Because Jordan has been permitted to proceed *in forma pauperis* in this action,[1] his claims are subject to *sua sponte* dismissal under the Prison Litigation Reform Act ("PLRA"). *See* 28 U.S.C. § 1915(e)(2).[2] Pursuant to the PLRA, the Court is obligated to evaluate the complaint and dismiss if it is "frivolous or malicious," if it "fails to state a claim upon which relief may be granted," or if it "seeks monetary relief against a defendant who is immune from such relief." *Id.* A claim is frivolous if it "lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint fails to state a claim upon which relief may be granted if relief could not be granted to the plaintiff "under any set of facts that would be proven consistent with the allegations" in the complaint. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) (citation omitted); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (complaint fails to state a

---

[1] *See* Doc. #9.
[2] *See also* 28 U.S.C. § 1915A (subjecting prisoner complaint to preliminary screening regardless of *in forma pauperis* status).

claim only where it does not plead "enough facts to state a claim to relief that is plausible on its face").

**Plaintiff's Allegations[3] and Procedural Posture**

Jordan, an inmate in the custody of the Mississippi Department of Corrections ("MDOC"), is currently housed at the Walnut Grove Correctional Facility ("WGCF") located in Walnut Grove, Mississippi. Doc. # 1 at 2. In the instant matter, Jordan complains about an alleged unsafe housing assignment both at WGCF now and at the Mississippi State Penitentiary ("MSP"), located in Parchman, Mississippi, where he was formerly housed. *Id.* at 4-5; Doc. # 11 at 2-10.

According to Jordan, when he was convicted and sentenced on the underlying state charges of exploitation of a child, the trial court ordered that he be "red tagged" and placed in protective custody ("PC"). *Id.* at 4; *see also* Doc. # 11 at 1-2. The red tag designation was necessitated due to his former employment as a law enforcement officer. *See id.*

Jordan avers that from February 24, 2022, through February 26, 2026, he was housed appropriately in a PC unit at MSP. Doc. # 11 at 4. Beginning on February 26, 2026, however, he alleges that Superintendent Wren and Warden Murphy housed "disciplinary detention inmates" in his PC unit which he contends violated MDOC policy and procedure and exposed him to an excessive risk to his safety. *Id.* at 2-5.

Jordan alleges that on or about February 26, 2026, and March 2, 2026, he sent messages to his sister via an MDOC approved ViaPath tablet advising her of his belief that he was subject to inappropriate housing and an unsafe environment. *Id.* at 4. Jordan contends that his sister emailed someone at MDOC and complained. *Id.*

[3] This section will include allegations from Jordan's complaint [Doc. # 1] and his response to the Court's Show Cause Order [Doc. # 11].

On March 3, 2026, Superintendent Wren allegedly issued a Rule Violation Report ("RVR") charging him with violating an MDOC policy that prohibits inmates from sharing information about the death of a fellow inmate before officials had informed the inmate's family. *Id.* at 5. Jordan was transferred from MSP to WGCF (a facility purportedly without a PC unit) on March 4, 2026. *Id.* at 8. Jordan avers that Disciplinary Hearing Officer Daphne Ellis ultimately found him guilty of the RVR despite his belief of a lack of evidence to support the charge. *Id.* at 5.

Jordan contends that prison officials violated MDOC policy and procedure in failing to keep him in protective custody and in the handling of the RVR process. Doc. # 1 at 4-5; *see also* Doc. # 11. Jordan, however, fails to allege that he has been the victim of an alleged assault nor does he otherwise identify the existence of a physical injury, instead only complaining of stress and digestive complications necessitating the need for fiber and stool softener pills. Doc. # 11 at 3-4.

On July 23, 2026, Jordan filed his complaint naming Superintendent Sequeia Wren, Mike Dixon (apparently an acting Superintendent at some point per Jordan's allegations), MDOC Commissioner Burl Cain, and Disciplinary Hearing Officer Daphne Ellis as Defendants in this action. Doc. # 1 at 2-3. In additional briefing, Jordan asserts that Warden Murphy should be added as a Defendant. Doc. # 11 at 9.

By way of relief, Jordan requests $500 a day for each day his rights have been violated. Doc. #1 at 5. He further seeks injunctive relief, namely that he be transferred back to the PC unit at MSP. *Id.* Jordan additionally asks that lost canteen purchases totaling $150.00 be returned to his account and that his wedding band be returned. Doc. # 11 at 10.

The Court entered an Order to Show Cause on August 17, 2026, directing Jordan to show cause why this case should not be dismissed with prejudice for failure to state a claim upon which relief can be granted. Doc. # 10. In that Order, the Court set forth Jordan's allegations (as stated

in his complaint), the applicable authority and the factual deficiencies of his claims pursuant to controlling law. *Id.* Jordan filed his response to the show cause order on September 3, 2026. Doc. # 11. In his response, Jordan provided advanced additional factual support which has been set forth above. *Id.*

**Inmates Not Entitled to Privileges or Specific Housing Assignment or Classification; Defendant's Participation in Grievance Process Does Not Give Rise to § 1983 Claim**

Inmates have neither a protectable property or liberty interest to any particular housing assignment or custodial classification, either under the United States Constitution or under Mississippi law. *Hewitt v. Helms*, 459 U.S. 460, 468 (1983); *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995); *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992); *McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir. 1990) (citations omitted); Miss. Code Ann. §§ 47-5-99 to -103 (2001). Prisoner housing assignments and classification are matters squarely within the "broad discretion" of prison officials, "free from judicial intervention" except in extreme circumstances. *McCord*, 910 F.2d at 1250 (citations omitted).

Similarly, the denial of privileges (such as commissary, visitation, and time out of one's cell) does not rise to the level of a liberty interest protected by due process. *See Sanchez v. Allen*, 611 F. App'x 792, 794 (5th Cir. 2015) (per curiam). Likewise, even when the deprivations described above violate department of corrections rules, the inmate is not entitled to relief under 42 U.S.C. § 1983. *Id*. In addition, a § 1983 plaintiff cannot proceed against a prison official based solely on the official's participation in the prison grievance process. *Dehghani v. Vogelgesang*, 226 F. App'x 404, 406 (5th Cir. 2007). Moreover, a prisoner possesses no constitutional right to a grievance procedure and no due process liberty interest right to have his grievance resolved to his satisfaction. *See Geiger v. Jowers*, 404 F.3d 371, 374-75 (5th Cir. 2005).

As such, Jordan's claims regarding his classification and/or custody status and the alleged improper housing of non-PC inmates in his PC unit and the improper administration of the grievance procedure should be dismissed. Likewise, Jordan's claim(s) against Disciplinary Hearing Officer Daphne Ellis should be dismissed as his allegations against Ellis are limited to her involvement in MDOC's grievance process, which do not implicate due process or equal protection.

**Due Process**

To establish a due process violation, a prisoner must establish that he has been denied a protected interest by the challenged prison action. *Richardson v. Joslin*, 501 F.3d 415, 418 (5th Cir. 2007). Generally, protected liberty interests are "limited to freedom from restrain which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless impose[] [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995)(internal citations omitted). Such protected "interests are generally limited to . . . regulations or statutes which affect the *quantity* of time rather than the quality of time served by a prisoner." *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997)(emphasis added).

In this case, Jordan complains that while he was housed in a PC unit (as ordered by the Court), other inmates who were not PC designated were also placed in his unit, and later that he was transferred to another MDOC facility. Jordan additionally challenges the RVR against him which he *seems* to believe led to his transfer to WGCF. A loss of privileges pursuant to disciplinary action, however, does not implicate the due process clause. *Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000) (holding prisoner's thirty-day loss of commissary privileges and cell restriction due to disciplinary action failed to give rise to due process claim); *see also King v. Sims*, No. 2:07cv136-MTP, 2009 WL 2497154, at *5 (S.D. Miss. Aug. 14, 2009) (finding that

reclassification, reassignment, and loss of commissary, phone and visitation privileges did not constitute a violation of plaintiff's constitutional rights). Moreover, a prisoner does *not* have a "constitutionally protected interest in either custodial classification . . . ." *Thomas v. Jordan*, No. 07-60071, 2008 WL 4649095, at *1 (5th Cir. 2008) (citations omitted). Further, no punishment affecting the *duration* of his confinement was imposed. As such, Jordan has failed to state a due process claim as to the punishment received.

For these reasons, Jordan's claim(s) regarding being found guilty of the RVR and alleged resulting punishment of transfer and housing of non-PC inmates in his PC unit will be dismissed for failure to state a claim for a due process violation.

**<u>Retaliation</u>**

Neither has Jordan alleged facts sufficient to support a claim for retaliation. Prison officials may not retaliate against prisoners for exercising their constitutional rights. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006) (citing *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). To state a valid claim for retaliation under § 1983, Jordan must allege (1) a specific constitutional right, (2) the defendants' intent to retaliate against him for the exercise of that right, (3) a retaliatory adverse act, and (4) causation. *See Jones v. Greninger*, 188 F.3d 322, 324-325 (5th Cir. 1999). A plaintiff must allege more than his personal belief that he was the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). Mere conclusory allegations of retaliation are not enough. *Moody v. Baker*, 857 F.2d 256, 258 (5th Cir. 1988). To demonstrate causation, the plaintiff must establish that but for the retaliatory motive the complained of incident would not have occurred. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998).

Jordan *seemingly* asserts that Defendant Wren and Warden Murphy transferred him from MSP to WGCF because he complained to family members about his housing situation, i.e. the placement of non-PC inmates in his PC unit at MSP. The transfer from MSP to WGCF, an

arguably more dangerous facility, is a sufficient adverse retaliatory act. *See Morris*, 449 F.3d at 687. That aside, Jordan has not asserted a protected constitutional right, as airing grievances to family members does not constitute such a right. And to the extent that he intends his believed *right* to protective custody should suffice, for the reasons set forth above, that too fails. Jordan further fails to allege facts to support retaliatory intent or causation. As such, Jordan's complaint fails to allege sufficient facts to state a claim for retaliation.

**Failure to Protect**

To the extent that Jordan asserts a claim for failure to protect, such a claim would fail. "The Eighth Amendment affords prisoners protection against injury at the hands of other inmates." *Johnson v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986) (citations omitted). To establish a claim for failure to protect, the plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his needs for protection." *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) (citations omitted). Deliberate indifference in this context means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference[,]" *Farmer v. Brennan*, 511 U.S. 825, 837 (1994), and "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). "Prison officials are not . . . expected to prevent all inmate-on-inmate violence, but [they] are charged with protecting incarcerated individuals from a known excessive risk to safety." *Loisel v. Epps*, No. 3:07cv35-JCS, 2009 WL 1515079, at *4 (S.D. Miss. Jun. 1, 2009). "Mere negligent failure to protect is not actionable under § 1983, nor is deliberate indifference established by an official's failure to alleviate the significant risk that the official should have perceived but did not." *Brown v. Bufkin*, 1:17cv306-RHW, 2019 WL 3220002, at *4 (S.D. Miss. Jul. 17, 2019) (citations omitted).

While Jordan clearly believes that Defendants' alleged actions or inactions placed him in an unsafe environment, he has not alleged, much less demonstrated, that he suffered any physical

injury or harm as result of the complained-of housing assignment. And even when given an opportunity to cure that defect, Jordan merely asserts the situation has caused him stress and digestive complications requiring the use of fiber and stool softeners. In a case filed under 42 U.S.C. § 1983, the plaintiff must show more than *de minimis* physical injury to prevail – regardless of the nature of the claim. *Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005), 42 U.S.C. § 1997e(e). Accordingly, Jordan's allegations fail to state a cognizable claim for failure to protect.

**Supervisor Liability**

Even assuming, arguendo, that Jordan's allegations did state a cognizable constitutional claim, his allegations against MDOC Commissioner Burl Cain and acting Superintendent Mike Dixon fail to state a claim upon which relief can be granted. A plaintiff proceeding under 42 U.S.C. § 1983 cannot establish that a government official violated the plaintiff's constitutional rights simply by virtue of the official's role as a supervisor. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). Instead, to state a viable claim under Section 1983, the plaintiff must "identify defendants who are either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (citing *Lozana v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). There are only two scenarios in which a supervisor may be held liable under § 1983: (1) when he affirmatively participates in the incident, or (2) when he implements an unconstitutional policy that results in the constitutional injury. *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009). Consequently, a supervisory official "can be held liable only for his own misconduct." *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011).

As to Defendants Cain and Dixon, Jordan merely complains that they failed to ensure his PC unit at MSP was limited to PC designated inmates nor return him to MSP after his transfer to WGCF. Apart from this, Jordan wholly fails to identify any *actions* or *inactions* taken by Cain or

Dixon nor has he otherwise established the requisite personal involvement. In sum, it is evident that Defendants Cain and Dixon have been named defendants in this action merely due to their positions of authority within MDOC; thus, they should be dismissed from this action. *See Oliver v. Scott*, 276 F.3d 736, 742 n.6 (5th Cir. 202) (Section 1983 does not allow a supervisory official to be held liable for the actions of their subordinates); *see also Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.").

For these reasons, Jordan's claims against Defendants Cain and Dixon will be dismissed for failure to state a constitutional question.

## Conclusion

Based on the foregoing discussion, the Court finds that Jordan has failed to state a cognizable constitutional claim. Accordingly, the Court finds that this action should be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). This dismissal counts as a "strike" under 28 U.S.C. § 1915(g). Jordan is cautioned that once he accumulates three strikes, he may not proceed *in forma pauperis* in any civil action or appeal filed while incarcerated unless he is in imminent danger of some physical injury. 28 U.S.C. § 1915(g). A final judgment in accordance with this opinion will be entered today.

**SO ORDERED**, this the 10th day of September, 2026.

/s/ Roy Percy
UNITED STATES MAGISTRATE JUDGE